541 A.2d 846

Joyceann Marie Woods, Appellant *v.* Commonwealth of Pennsylvania, Department of Transportation, Bureau of Traffic Safety, Appellee.

Submitted on briefs March 21, 1988, to Judges DOYLE and MCGINLEY, and Senior Judge KALISH, sitting as a panel of three.

*J. Richard Gray, Windolph, Burkholder, Stainton and Gray,* for appellant.

*Christopher J. Clements,* Assistant Counsel, with him, *Harold H. Cramer,* Assistant Chief Counsel, *John L. Heaton,* Chief Counsel, for appellee.

OPINION BY JUDGE DOYLE, May 23, 1988:

Before this Court is the appeal of Joyceann Marie Woods (Appellant) who appeals from an order of the Court of Common Pleas of Lancaster County upholding the Department of Transportation's (DOT) suspension of her driving privileges for one year pursuant to Section 1547(b) of the Vehicle Code (Code), 75 Pa. C. S. §1547(b). We reverse.

The trial court found that on December 16, 1986, Officer Jeffrey Stankard (Officer Stankard) was dispatched to investigate a single vehicle collision. At the scene of the accident, Officer Stankard encountered Appellant behind the wheel of a vehicle that had left the roadway and crashed into a telephone pole. Officer Stankard testified that Appellant smelled strongly of alcohol, and when she left her vehicle, she walked with a staggering gait. Observing that Appellant had lacerations on her head, Officer Stankard gave her a piece of gauze and radioed to see if an ambulance was en route. He then followed the ambulance to the hospital for the purpose of requesting that Appellant submit to a blood alcohol test.

We continue the narrative from the opinion of the trial court:

Ms. Woods was in a bed at the emergency department of the hospital in an open area with a number of beds and curtains around. The doctor told Officer Stankard he could not interview Ms. Woods, who was refusing any kind of treatment. She would not let attendants take her blood pressure, she would not sign any forms and was generally pretty hostile to hospital employees.

Office Stankard did ask her to submit to a blood test as aforesaid but she refused.

Officer Stankard also testified that he never placed her under arrest at the scene or at the hospital, nor did he ever indicate that she could not leave. He never attempted to restrict her freedom although as a matter of fact, Ms. Woods never attempted to get up and leave.

The trial court dismissed Appellant's appeal holding that under the facts of the instant matter, there was no need for Officer Stankard to make a formal declaration of arrest or to physically restrain Appellant. This appeal follows.[1]

It is well-established that in order for this court to sustain a license suspension for the refusal to submit to a chemical test, the Department must prove that the driver involved: (1) was placed under arrest for driving under the influence of alcohol and that the arresting officer had reasonable grounds to believe that the operator was driving while intoxicated; (2) was asked to submit to a chemical test; (3) refused to comply; and (4) was warned that his license would be revoked if he refused to take the test. *Phillips v. Commonwealth*, 84 Pa. Commonwealth Ct. 217, 478 A.2d 958 (1984). The question of whether or not a driver has been "placed under arrest" for purposes of Section 1547(b) is a factual rather than a legal determination, and all that is necessary is that the driver be under the custody and control of the person effecting the arrest. *Gresh v. Department of Transportation, Bureau of Traffic Safety,* 76 Pa. Commonwealth Ct. 483, 464 A.2d 619 (1983). In the instant

---

[1] Our scope of review where the lower court hears the matter *de novo* is limited to a determination of whether or not the court based its findings of fact on substantial evidence or committed an error of law. *Phillips v. Commonwealth*, 84 Pa. Commonwealth Ct. 217, 478 A.2d 958 (1984).

matter, Appellant argues that the trial court erred in upholding the suspension of her license because the Department failed to present any evidence to support a finding that Appellant had been placed under arrest when she was asked to submit to a blood alcohol test. We are constrained to agree.

Our Supreme Court addressed the question of what constitutes an arrest under Section 1547(b) of the Code in *Glass v. Department of Transportation, Bureau of Traffic Safety,* 460 Pa. 362, 333 A.2d 768 (1975). The Court in *Glass* defined the physical act of arrest as "any act that indicates an intention to take [a person] into custody and that subjects him to the actual control and will of the person making the arrest." *Id.* at 367, 333 A.2d at 770, (quoting *Commonwealth v. Bosurgi,* 411 Pa. 56, 68, 190 A.2d 304, 311 (1963)), *cert. denied,* 375 U.S. 910 (1964). This Court, therefore, has consistently held that no formal declaration of arrest or act of physical force is required. *Gresh.*

Applying the *Glass* test to the case at bar, we cannot agree with the trial court's conclusion that Officer Stankard properly placed Appellant under arrest since he never attempted to restrict her freedom nor did he offer *any* words or actions which would have notified a reasonable person that she was not free to go. The trial court relied solely upon *Department of Transportation, Bureau of Traffic Safety v. Uebelacker,* 98 Pa. Commonwealth Ct. 436, 511 A.2d 929 (1986), to support its decision. Although this case is similar, and the decision most difficult, we find *Uebelacker* to be factually distinguishable from the instant matter.

The officer in *Uebelacker* did advise the driver, while he was in bed in the hospital emergency room, that he was going to be arrested for driving under the influence of alcohol. The officer then proceeded to request that the driver submit to a blood alcohol test, and he explained the consequences of refusing the test.

Thus, in *Uebelacker,* the officer clearly placed the driver under his custody and control by confronting him at his hospital bed and informing him that he intended to place him under arrest *prior to* requesting that the driver submit to the blood alcohol test. As we stated in *Uebelacker:*

> It was not necessary for the officer to use the exact words, 'You are now under arrest.' Given the totality of the circumstances, we think a reasonable interpretation of the officer's words and actions would have been that he was going to place Appellee under arrest, not sometime in the future, but *immediately.*

*Id.* at 440, 511 A.2d at 931 (emphasis in original). Furthermore, Section 1547(b) of the Code requires that the driver be in the officer's custody and control at the time the refusal to submit to a chemical test is made. For this reason, in *Uebelacker* we observed that "[a]nything the officer may have said to Appellee regarding arrest *after* Appellee had refused to submit to the blood test is irrelevant to the question of whether or not the Appellee was under arrest at the time the refusal was made." *Id.* at 440, 511 A.2d at 931 (emphasis in original).

Conversely, in the case at hand, the trial court found that "Officer Stankard . . . testified that he never placed her [Appellant] under arrest at the scene or at the hospital, nor did he ever indicate that she could not leave." Having established that Officer Stankard never communicated, either verbally or through his actions, any message to Appellant that she was in his custody and control, we must reverse the decision of the trial court.

### ORDER

NOW, May 23, 1988, the order of the Court of Common Pleas of Lancaster County in the above-captioned matter is reversed.